# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br>United States Department of Justice<br>Consumer Protection Branch<br>450 5th St. NW, Suite 6400,<br>Washington, DC 20001,<br><br>                    **Plaintiff**,<br><br>   v.<br><br>**MONUMENT, INC.**,<br>a Delaware limited liability company,<br>350 7th Ave.<br>New York, NY 10001,<br><br>                    **Defendant**. | **Case No.**<br><br>**COMPLAINT FOR PERMANENT INJUNCTION, CIVIL PENALTY JUDGMENT, AND OTHER RELIEF** |

Plaintiff, the United States of America, acting upon notification and referral to the Attorney General by the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. Plaintiff brings this action for Defendant's violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Opioid Addiction Recovery Fraud Prevention Act of 2018 ("OARFPA"), 15 U.S.C § 45d. Defendant's OARFPA violations are in connection with Defendant's advertising, marketing, promotion, offering for sale, or sale of its alcohol addiction treatment services. For these violations, Plaintiff seeks relief, including a permanent injunction, civil penalties, and other relief, pursuant to Sections 5(m)(1)(A), 13(b), and 19 of the FTC Act, 15 U.S.C. §§ 45(m)(1)(A), 53(b), 57b, and the OARFPA, 15 U.S.C. § 45d.

1

**SUMMARY OF THE CASE**

2.      Defendant Monument, Inc. ("Monument") provides an online alcohol addiction treatment service (the "Service"), with access to online support groups, community forums, online therapy, and access to physicians who can prescribe medications that assist in treating alcohol addiction. Monument has promised that its Service is "100% confidential" and "HIPAA compliant" and that Monument will not disclose its users' personal information, including their health information, to third parties without users' knowledge and consent. Notwithstanding these express and prominent privacy promises, Monument disclosed its users' health information to third-party advertising platforms, such as Meta and Google, via tracking technologies, for advertising and the third parties' own purposes. According to Monument's own internal review, Monument may have disclosed a wide variety of health information of more than 80,000 Monument users to these third parties. These practices violated Section 5 of the FTC Act and Section 8023 of OARFPA.

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

4.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), and (d), 1395(a), and 15 U.S.C. § 53(b).

**PLAINTIFF**

5.      Plaintiff brings this action upon notification and referral to the Attorney General by the FTC, pursuant to Section 16(a)(1) of the FTC Act, 15 U.S.C. § 56(a)(1). The FTC is an independent agency of the United States Government created by the FTC Act. 15 U.S.C. §§ 41–

2

58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also enforces OARFPA, 15 U.S.C § 45d, which prohibits unfair or deceptive acts or practices in connection with substance use disorder treatment products and services.

## DEFENDANT

6.      Monument is a Delaware corporation with its principal office and place of business at 350 7th Ave., New York, NY 10001. Monument transacts or has transacted business in this District and throughout the United States. Monument has developed and offered for sale, in this District and throughout the United States, an online alcohol treatment platform.

## COMMERCE

7.      At all times relevant to this Complaint, Monument has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## MONUMENT'S BUSINESS ACTIVITIES

8.      Monument has developed, advertised, marketed, promoted, offered for sale, and sold the Service—Monument's only product or service—through its website ("www.joinmonument.com") since January 2020. Monument offers the Service to consumers in two forms: (a) a Community Membership for $14.99/month, which includes access to online support groups and online community forums discussing how to overcome alcohol addiction; and (b) insurance-covered therapy and access to a physician to obtain prescriptions for medications that help treat alcohol addiction (which, for those without coverage, costs $100 per

3

physician appointment, $149 per month for bi-weekly therapy, and $249 per month for weekly therapy). Prior to July 2023, Monument provided Community Membership to users for free.

9.      To sign up for the Service, a consumer must provide their email address, agree to Monument's Terms of Use and Privacy Policy, choose an online username, and fill out an intake survey on Monument's website that asks for information on the consumer's history of alcohol consumption. To access therapy or physician services, the consumer must also provide their first and last name, date of birth, legal sex, phone number, address, and a copy of their government-issued ID. In addition, the consumer may provide their medical history and/or insurance information. Monument also collects consumers' IP addresses and device IDs when they sign up for and use the Service.

10.      Since its inception, Monument has utilized a variety of third parties to advertise the Service, including, at various times, AdRoll, Amazon, Google, Impact, LiveIntent, Meta, Microsoft, Pinterest, PowerInbox, Quora, and Reddit. Between January 2020 and December 2022, Monument spent over $3 million on advertising on Meta's platforms and nearly $2.4 million to advertise on Google.

11.      Monument has seen a steady increase in its userbase over the past three years. In 2020, 10,773 consumers signed up for Community Memberships and 2,375 consumers accessed physician and therapist services. In 2021, 16,573 consumers signed up for Community Memberships and 4,548 accessed physician and therapist services. And, in 2022, 37,276 consumers signed up for Community Memberships while 8,132 consumers accessed physician and therapist services.

4

## MONUMENT MISREPRESENTATED ITS DISCLOSURES OF USERS' HEALTH INFORMATION

12.     Between January 2020 and December 2022, Monument promised to keep users' personal information, including their sensitive health information, private, stating that it would not disclose such information to third parties without users' written consent. Monument also asserted that it was compliant with the Health Insurance Portability and Accountability Act ("HIPAA"). Examples include:

 a. Since January 2020, Monument's Frequently Asked Questions section of its website has stated: "In the Monument platform, the only information that is shared is the nickname that you create during sign-up. Respecting Anonymity is one of our Community Principles, and we will remove any posts that ask for or share personally identifiable information. We take your privacy and security very seriously. Monument is compliant with all relevant privacy laws . . . ."

 b. From May 3, 2021, to April 30, 2023, Monument's webpage concerning insurance stated: "Is Monument HIPAA Compliant? Monument is fully HIPAA-compliant. Your information is kept confidential and is not shared with any third party without your expressed written consent."

 c. From February 8, 2022, through April 30, 2023, Monument displayed a representation to consumers signing up for the Service that "any information you enter with Monument is 100% confidential, secure, and HIPAA compliant." An image of that representation is below:



13.     Monument routinely distributed these representations through advertisements, claiming that its services were "Anonymous" and "confidential," as demonstrated in the below advertisements which Monument placed on Google.

 

14.     Monument's users have frequently asked about the privacy of their personal information. And, since no later than August 2020, Monument employees have regularly

6

responded to these inquiries with representations that Monument keeps users' personal

information private, does not disclose it to third parties without their written consent, and is

HIPAA compliant. Examples include:

      a.  In August 2020, Monument's Operations and Compliance Manager responded

        to a consumer asking about the privacy of their personal information, stating:

        "[a]ll of your Protected Health Information (PHI) in addition to Personally

        Identifiable Information (PII) is kept private under HIPAA and state medical

        record laws."

      b.  In April 2022, a Monument customer service representative told a customer

        inquiring about the privacy of their information: "[W]e also abide by HIPAA

        regulations which means we are not allowed to share any of your medical

        information on Monument without your written consent to do so."

      c.  In July 2022, a Monument customer service representative told a consumer:

        "We are fully HIPAA-compliant and do not provide information to third[

        ]parties unless a member requests that we do so and sends us permission in

        writing to contact outside persons."

15.    As described below, each of these representations made was false or misleading.

16.    Notably, Monument's Privacy Policy contradicted the above representations,

stating: "We may disclose Personal Data that we collect or you provide as described in this

privacy policy: to affiliates, contractors, service providers, and other third parties we use to

support our business. The services provided by these organizations include providing IT and

infrastructure support services, and marketing[.]" However, as shown in the image below, this

statement was buried in the middle of Monument's voluminous, densely worded privacy policy, and, in any event, it does not cure the express misrepresentations that it keeps users' personal information private.



**MONUMENT DISCLOSED CONSUMERS' HEALTH INFORMATION TO THIRD PARTIES**

17.     On December 1, 2022, HHS's Office for Civil Rights published business guidance titled "Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates," which "provid[ed] a general overview of how the HIPAA Rules apply to regulated entities' use of tracking technologies." Monument had, since January 2020, been using such tracking technologies on its website to transmit users' personal information to third-party platforms, such a Meta and Google, for advertising and the platforms' own purposes. Shortly after reviewing HHS's guidance, Monument removed all such tracking technologies from its

website, and it stopped transmitting users' personal information to these third-party advertising platforms.

18.     In March 2023, Monument sent a notice to its users stating that, following OCR's publication of this business guidance, Monument reviewed its own policies, practices, and procedures concerning the disclosure of users' personal information via tracking technologies to advertising platforms. According to the notice:

> Monument's internal review concluded that some information may have been shared with those third parties without the appropriate authorization, consent, or agreements required by law. The internal review concluded that this activity commenced in January of 2020 . . . . The information shared may have included name, date of birth, email address, telephone number, address, Monument ID, insurance member ID, IP address, unique digital ID, Uniform Resource Locator (URL), photograph, selected services or plan, assessment or survey responses, appointment-related information, and associated health information.

19.     Around the same time, Monument similarly notified its therapists about the internal review, stating:

> During our internal review, we discovered that some member information may have been shared with third-party tracking services without the required authorization, consent, or agreements. This activity began in January 2020 for Monument . . . . The information shared may have included name, date of birth, email address, telephone number, address, Monument ID, insurance member ID, IP address, unique digital ID, URL, photograph, selected services or plans, assessment or survey responses, appointment-related information, and associated health information.

<u>Disclosures of health information through Custom Events</u>

20.     Since January 2020, Monument has, contrary to its privacy promises, disclosed users' personal information, including their health information, to numerous third-party advertising platforms via tracking technologies, known as pixels and application programming interfaces ("APIs"), which Monument integrated into its website. Monument disclosed this

information in order to advertise on the third parties' platforms—specifically to re-target users with advertisements for Monument's services (primarily to encourage Community Membership users to sign up for therapist and physician services), as well as to find and target potential new users with advertisements.

21.     Monument used these pixels and APIs to track "Standard Events," records of routine website functions, such as when a consumer visited a webpage, as well as "Custom Events," records of user-website interactions unique to Monument's website, such as when a consumer signed up for the Service.

22.     Monument gave the Custom Events descriptive titles that included health information about users' enrollment in the Service and therapy, such as "Paid: Weekly Therapy" when a user signed up for the Service and included weekly therapy. By including users' health information in the titles of these Custom Events and then sharing the events with third-party advertising platforms, Monument conveyed this health information to the recipient advertising platforms. Monument disclosed users' email addresses, IP addresses, and other identifiers along with these Custom Events, so that the third parties could identify the users and associate the Custom Events with specific individuals.

23.     Monument estimates that it disclosed Custom Events containing health information to third party-advertising platforms for as many as 84,468 users.

24.     Monument's disclosures of these Custom Events directly contradicted its statements that it would not share users' personal information with third parties without users' knowledge or written consent.

<u>Disclosures of health information to Meta</u>

25.    Beginning in January 2020, Monument disclosed users' personal information, including their health information, to Meta in the form of Custom Events through both the Meta pixel and a Meta API, known as "Conversions API"—both of which Monument had placed on its website. Monument gave these Custom Events titles that conveyed that the users with which they were associated had signed up for the Service and were therefore seeking and/or receiving treatment for alcohol addiction, including therapy: "Sign Up," "Paid: Med Management," "Paid: Bi Weekly Therapy," "Paid: Weekly Therapy," "Text a therapist sign up," "Call a therapist signup," "Paid – Total Care with Bi-Weekly Therapy," and "Paid – Total Care with Weekly Therapy." And Monument sent the events to Meta along with users' IP addresses, email addresses, first names, and identifying Facebook cookies so that Meta could match the Custom Events with users' Facebook accounts for advertising.

26.    Notably, Monument "hashed" users' email addresses (i.e., converted the email addresses into a sequence of letters and numbers through a cryptographic tool) before disclosing them to Meta (and other third parties). Monument knew, however, that third parties such as Meta would effectively undo the hashing and reveal the email addresses of those users with accounts on the respective third parties' platforms, which is how Meta matched these email addresses with Facebook user IDs. Indeed, Meta's standard terms of service, to which Monument agreed, explained that Meta would use hashed email addresses it received from Monument to match users with their Facebook user IDs for advertising purposes, among other things. Thus, Monument knew that by sending these hashed email addresses to third parties, it was telling these third parties which of their users were obtaining alcohol addiction treatment.

11

27.     In June 2020, Meta notified Monument that its Custom Events conveyed health information, instructing Monument not to include therapy or specific plan names in the event titles. In response, Monument limited the Custom Events it sent to Meta to "Sign Up," "Paid," "Paid – A" (which replaced "Paid – Total Care with Bi-Weekly Therapy"), and "Paid – B" (which replaced "Paid – Total Care with Weekly Therapy)." However, even with these limitations, the titles of these Custom Events still effectively disclosed to Meta every time a consumer signed up for the Service. Furthermore, in January 2022, a Monument engineer explained to Meta that the "Paid – A" event represented "Bi-Weekly Therapy (new)" and the "Paid – B" event represented "Weekly Therapy (new)," thereby disclosing to Meta that all users associated with these events had signed up for the Service and therapy with Monument.

28.     In January 2022, one of Monument's engineers raised an alarm that the company was sending users' health information to Meta, suggesting that Monument stop sending users' hashed email addresses to Meta. However, Monument did not take the recommendation and continued sending Custom Events, along with users' email addresses, IP addresses, and other identifiers to Meta through at least December 2022.

29.     Monument did not take sufficient steps to adequately track, map, or inventory the personal information it collects, uses, and discloses to third-party advertising platforms. Monument, therefore, did not know how many users' health information it has disclosed to Meta—only that it is as many as 84,468 users. For example, from June 2021 to November 2022, Monument sent the following Custom Events to Meta:

    a.   At least 25,110 Custom Events titled "All signups including paid," along with users' IP addresses and Meta cookies, and often their email addresses and first names.

    b.   At least 1,765 Custom Events titled "Paid," along with users' with IP addresses and Meta cookies, and often their email addresses and first names.

    c.   At least 627 Custom Events titled "Paid A," along with users' with IP addresses and Meta cookies, and often their email addresses and first names.

    d.   At least 843 Custom Events titled "Paid B," along with users' IP addresses and Meta cookies, and often their email addresses and first names.

30.    Between January 2020 and December 2022, Monument used Meta's advertising platform to group the users it had identified to Meta via Custom Events into groups known as "audiences." Oftentimes, Monument gave these audiences names in the advertising platform that further identified to Meta that they had signed up for the Service (and thus alcohol addiction treatment), such as "Paid sign up past 180 days," "sign up 180 days," "Paid b conversion 180 days," "Paid – A conversion 180 days." Monument sent advertisements to users via these audiences, as well as used the audiences to find similar Facebook users and target them with advertisements for the Service.

<u>Disclosures of health information to other third parties</u>

31.   Monument similarly sent Standard Events and Custom Events containing as many as 84,468 users' health information to several other third-party platforms for advertising during the same time frame. In all such instances, it accompanied the events with users' IP addresses and/or email addresses so that the third parties could associate the events with individuals.

a.   <u>AdRoll</u> – From August 2020 to February 2023, Monument sent events titled "Sign Up" and "Purchase" to AdRoll.

b.   <u>Amazon</u> – From May 2020 to December 2022, Monument sent an event titled "Sign Up" to Amazon.

c.   <u>Google</u> – From January 2020 to December 2022, Monument sent events titled "Sign Up" and "Activated" to Google.

d.   <u>Impact</u> – From September 2021 to February 2023, Monument sent an event titled "Sign Up" to Impact.

e.   <u>LiveIntent</u> – From October 2021 to December 2022, Monument sent the following events to LiveIntent for advertising: "Monument – Physician Sign Up Confirmation" for 3,537 users, "Monument – Total Care Sign Up Confirmation Biweekly" for 1,416 users, "Monument – Total Care Sign Up Confirmation Weekly" for 1,842 users.

f.   <u>Microsoft</u> – From August 2020 to December 2022, Monument sent an event titled "Sign Up" to Microsoft.

g.   <u>Pinterest</u> – From August 2021 to December 2022, Monument sent events titled "Sign Up" and "checkout" to Pinterest.

h. <u>PowerInbox</u> – From July 2020 to December 2022, Monument sent an event titled "Sign Up" to PowerInbox.

i. <u>Quora</u> – From May 2020 to February 2022, Monument sent events titled "CompleteRegistration" and "Purchase" to Quora.

j. <u>Reddit</u> – From October 2020 to December 2022, Monument sent events titled "Sign Up" and "Purchase" to Reddit.

32. In addition, Monument determined that it may have disclosed the insurance information, name, email address, address, and/or phone number of up to 2,436 users to Google via an integration of Google Analytics with Monument's Jotform insurance information collection page.

<u>Failure to limit third parties' use of consumers' health information</u>

33. In disclosing users' health information to Meta, Google, and other third parties, Monument did not contractually limit how these third parties could use or disclose that sensitive information.

34. Monument merely agreed to the third parties' general terms of service, which either placed no restrictions on the third parties' use and disclosure of the information or specifically permitted them to use the information for their own purposes.

a. For example, Meta's Business Tools Terms, to which Monument agreed, stated that it "may also use Event Data . . . for research and development purposes, and to . . . improve the Facebook Company Products." And Meta has in fact used the users' personal information it received from Monument

15

for its own purposes, including improving its advertising products, tracking

suspicious activity on its platforms, and research and development.

b.  Similarly, Pinterest's Ad Data Terms provided: "We use Ad Data you give us

for measuring ad effectiveness, ad delivery and reporting, improving safety and

security on Pinterest, research and product development, and for other uses that

you give us permission for."

a.  Google Analytics's documentation regarding "Data sharing settings" explained:

"When you turn this setting ON, Google can access and analyze data to better

understand online behavior and trends, and use this data to improve Google

products and services. For example, this data can be used to improve the

Google Ads system tools that you use to create, manage, and analyze your ad

campaigns." This "data sharing setting" was enabled for 16 Monument

properties, at least two of which were linked to Google Ad accounts.

<u>Deceptive HIPAA Representations</u>

35.  In December 2021, Monument hired an outside company to assess Monument's

compliance with HIPAA in a process known as a "HIPAA Gap Assessment." The assessment

took place from December 2021 to January 2022, and it consisted of interviews of Monument

staff, as well as a review of Monument's policies, practices, and procedures. The assessor

concluded that Monument was only 60% in compliance with HIPAA, because the company had

"not addressed" the following 10 categories: risk analysis, risk management, a contingency plan,

a disaster recovery plan, testing and revision procedures, application and criticality analysis,

contingency operations, maintenance records, emergency access procedures, and person or entity

authentication. In addition, the assessor found that Monument had only "partially addressed" an additional 23 categories, including with respect to information access management, access authorization, security awareness and training, protections from malicious software, access controls and validation procedures, user identification, and encryption. It recommended 34 changes to Monument's policies, practices, and procedures to bring Monument into compliance with HIPAA.

36.     In February 2022, Monument hired the same assessor to evaluate Monument's data security practices, policies, and procedures in connection with its HIPAA compliance. In a November 2022 report, the assessor concluded that Monument's data security policies, practices, and procedures were only 71% in compliance with HIPAA, because the company had "not addressed" two controls related to risk management and logical access and had only "partially addressed" an additional 11 controls related to security policy, risk management, physical security, network security, logical access, and operations management.

37.     Notwithstanding its assessor's determination that Monument had significant deficiencies in its HIPAA compliance program, Monument continued to represent to consumers that it was HIPAA compliant. Monument received an assessment score of 94% by summer of 2023.

### MONUMENT FAILED TO IMPLEMENT REASONABLE PRIVACY MEASURES TO PREVENT DISCLOSURE OF HEALTH INFORMATION VIA ADVERTISING TECHNOLOGIES

#### Unfair privacy practices

38.     From no later than January 2020 to at least December 2022, Monument engaged in a number of practices that, individually or taken together, failed to prevent the disclosure of

users' health information via tracking technologies to third-party advertising platforms. Among other things, Monument:

    a.   failed to assess adequately the privacy risks of third-party tracking technologies, including pixels and APIs, prior to incorporating those technologies into its website;

    b.   failed to engage in any audits, assessments, compliance reviews, or tests—including any tests to determine what data was transferred to third parties—regarding the data collection and privacy practices of the third-party companies whose tracking technologies Monument incorporated into its website;

    c.   failed to obtain users' affirmative express consent to disclose their health information to third parties for advertising, as well as for the third parties' own purposes, such as research and improvement of their own products;

    d.   failed to enforce or ensure compliance with its own privacy promises to consumers by, for example, failing to establish or enforce any internal privacy compliance programs, protocols, or policies with respect to third-party tracking technologies integrated into Monument's website;

    e.   failed to limit third parties contractually from using users' health information for their own purposes, including but not limited to research and improvement of their own products, when Monument did not provide users notice or obtain their consent for such uses;

f.   failed to develop policies, practices, and procedures regarding the secure

implementation of third-party tracking technologies, including policies,

practices, and procedures that ensured that the implementation of third-party

tracking technologies complied with Monument's privacy promises; and

g.   failed to inventory or track the personal information, including the health

information, it collected from consumers via tracking technologies, including

tracking which consumers' personal information Monument disclosed to third

parties for advertising and the third parties' own purposes.

39.   As a result, Monument repeatedly misrepresented its practices with respect to its

disclosure of users' health information for advertising and for the recipient third parties' own

purposes (*see* Paragraphs 12-34), and Monument failed to obtain users' affirmative express

consent before making such disclosures.

<u>Consumer Injury</u>

40.   Monument's disclosure of thousands of users' health information without

reasonable privacy practices or safeguards, and without users' affirmative express consent, has

caused or is likely to cause them substantial injury. This health information—including the fact

that Monument's users are receiving alcohol addiction treatment, including therapy and

medication, together with identifying information such as their email addresses and IP

addresses—is highly sensitive. Disclosure of this information is likely to cause stigma,

embarrassment, and/or emotional distress to the users. Exposure of this information may also

affect these users' ability to obtain and/or retain employment, housing, health insurance, or

disability insurance.

41.     Monument's users could not reasonably avoid these harms. Monument's specific privacy representations, as described in Paragraphs 12-14, made it highly likely consumers would rely on those express claims and highly unlikely they would scour the dense privacy policy for contrary information.

42.     These harms were not outweighed by countervailing benefits to consumers or competition.

<u>Monument is violating or about to violate laws enforced by the Commission</u>

43.     Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Monument is violating or are about to violate laws enforced by the Commission because, among other things, Monument engaged it its unlawful acts and practices repeatedly over a period of two years; Monument engaged in its unlawful acts and practices notwithstanding internal concerns and warnings from Meta; Monument continued to make misleading HIPAA representations even after learning of its HIPAA audit results; Monument remains in the business of providing an alcohol recovery platform that require both the collection of substantial amounts of users' personal information, including their health information and advertising of its products; and Monument maintains the means and ability to resume its unlawful conduct.

## **VIOLATIONS OF THE FTC ACT**

44.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

45.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

46.     Acts or practices are unfair under Section 5 of the FTC Act if they cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## Count I

## Unfair Privacy Practices

47.     In numerous instances, as alleged in Paragraphs 38-39, Monument failed to employ reasonable measures to prevent the disclosure of consumers' health information via tracking technologies to third parties for advertising and the third parties' own purposes.

48.     As described in Paragraphs 40-42, Monument's actions caused or are likely to cause substantial injury to consumers that those consumers could not themselves reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition.

49.     Therefore, Monument's acts or practices as set forth in Paragraph 47 constitute unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), (n).

## Count II

## Unfair Disclosure of Consumers' Health Information for Advertising and Recipient Third Parties' Own Purposes Without Affirmative Express Consent

50.     In numerous instances as alleged in Paragraphs 12-14, 17-34, 38-39, Monument failed to obtain consumers' affirmative express consent before disclosing their health information to third parties for adverting and the third parties' own purposes.

21

51.     As described in Paragraphs 40-42, Monument's actions caused or are likely to cause substantial injury to consumers that consumers could not themselves reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition.

52.     Therefore, Monument's acts or practices as set forth in Paragraph 50 constitute an unfair act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), (n).

## Count III

**Privacy Misrepresentation – Disclosures of Health Information to Third Parties**

53.     In numerous instances, as alleged in Paragraphs 12-14, Monument represented, directly or indirectly, expressly or by implication, that it would not disclose consumers' health information to third parties without those consumers' knowledge or consent.

54.     In fact, in numerous instances in which Monument made the representations set forth in Paragraph 53, Monument did disclose consumers' health information to third parties, as set forth in Paragraphs 17-34, without those consumers' knowledge or consent.

55.     Therefore, Monument's representations as set forth in Paragraph 53 are false or misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count IV

### Misrepresentation – Compliance with HIPAA

56.     In numerous instances, as alleged in Paragraphs 12 and 14, Monument represented, directly or indirectly, expressly or by implication, that it was compliant with HIPAA.

57.     In truth and fact, in numerous instances in which Monument made the representations set forth in Paragraph 56, Monument was not compliant with HIPAA, as Monument acknowledged in its breach notification described in Paragraphs 17-19, and as its own assessor determined, as set forth in Paragraphs 35-36.

58.     Therefore, Monument's representations as set forth in Paragraph 56 are false or misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### VIOLATION OF THE OPIOID ADDICTION RECOVERY FRAUD PREVENTION ACT OF 2018

59.     The Opioid Addiction Recovery Fraud Prevention Act of 2018 ("OARFPA"), P.L. 115-271, 15 U.S.C § 45d, was enacted on October 24, 2018. OARFPA prohibits unfair or deceptive acts or practices with respect to any substance use disorder treatment service or substance use disorder treatment product. 15 U.S.C. § 45d(a). OARFPA defines "substance use disorder treatment product" to mean "a product for use or marketed for use in treatment, cure, or prevention of a substance use disorder, including an opioid use disorder." P.L. 115-271 § 802, 15 U.S.C § 45d.

60.    As described in Paragraphs 8-14 above, Monument has advertised, marketed, promoted, offered for sale, and sold alcohol addiction treatment services. Furthermore, Monument has never advertised, marketed, promoted, offered for sale, or sold any service other than its alcohol addiction treatment services.

61.    Pursuant to 15 U.S.C. § 45d(b)(1), a violation of 15 U.S.C. § 45d(a) is treated as a violation of a rule under Section 18(a) of the FTC Act, 15 U.S.C. § 57a(a), regarding unfair or deceptive acts or practices.

62.    Section 19(b) of the FTC Act, 15 U.S.C. § 57b(b), and Section 8023(b) of the OARFPA, 15 U.S.C. § 45d(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendant's violations of OARFPA.

63.    Monument mispresented its practices as to its disclosure of users' personal information, including their health information, in connection with its advertisement, marketing, promotion, offering for sale, and sale of alcohol addiction treatment services.

## Count V

## Deceptive Privacy Claim

64.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of its alcohol addiction treatment services, including through the means described in Paragraphs 8-14, Monument represented, directly or indirectly, expressly or by implication, that it would not disclose users' personal information, including their health information, to third parties without those consumers' knowledge or consent.

65.     In truth and in fact, as set forth in Paragraphs 17-34, Monument disclosed users'

personal information, including their health information, to third parties without consumers'

knowledge or consent.

66.     Therefore, the making of the misrepresentations set forth in Paragraph 64

constitutes a deceptive act or practice with respect to a substance use disorder treatment product,

in violation of Section 8023(a) of OARFPA, 15 U.S.C. § 45d(a).

## CONSUMER INJURY

67.     Consumers are suffering, have suffered, and will continue to suffer substantial

injury as a result of Monument's violations of the FTC Act. Absent injunctive relief by this

Court, Monument is likely to continue to injure consumers and harm the public interest.

## CIVIL PENALTIES

68.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), authorizes this

Court to award civil penalties for each violation of OARFPA.

69.     Defendant violated OARFPA with the knowledge required by Section 5(m)(1)(A)

of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests that the Court:

A.     Enter a permanent injunction to prevent future violations of the FTC Act and the

Opioid Addiction Recovery Fraud Prevention Act by Monument;

B.     Impose civil penalties on Defendant for each violation of OARFPA alleged in this

Complaint; and

C.     Award any additional relief as the Court determines to be just and proper.

Respectfully submitted,

Dated:   4/11/24

Of Counsel:

**ELISA JILLSON**
D.C. Bar No. 989763
**ROBIN ROSEN SPECTOR**
D.C. Bar No. 449324
Federal Trade Commission
600 Pennsylvania Ave., NW
Mailstop CC-6316
Washington, DC 20580
(202) 326-3001 (voice)
(202) 326-3062 (fax)
Email: ejillson@ftc.gov
Email: rspector@ftc.gov

**FOR THE UNITED STATES
OF AMERICA:**

**BRIAN BOYNTON**
Assistant Attorney General
Civil Division

**AMANDA N. LISKAMM**
Director
Consumer Protection Branch

**LISA K. HSIAO**
Senior Deputy Director

**ZACHARY A. DIETERT**
Assistant Director

*Richard S. Greene IV*

**RICHARD S. GREENE IV**
TN Bar No. 024450
Senior Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
450 5th St. NW, Suite 6400
Washington, DC 20001
Phone: 202-305-3827
Email: Richard.S.Greene.IV@usdoj.gov